KAREN M. STEVENS
California Bar No. 110009
185 W.F. Street, Suite 100
San Diego, California 92101
Telephone: (619) 239-8553

Attorney for Gerardo Salto-Rocha

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GERARDO SALTO-ROCHA (1),<br>JOSE HERNANDEZ-RIVAS (2),<br><br>Defendants. | Case No. 08CR2430-BTM<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR VIDEOTAPED DEPOSITION |

**I.**

**BACKGROUND**

Defendant Salto-Rocha was charged on July 8, 2008, in complaint No.08mj2098, with violation of Title 8, U.S.C., Section 1324 (a)(2)(B)(iii), Bringing in Aliens Without Presentation.

That Complaint alleges he and co-defendant Odilon Cira-Ramirez violated the immigration laws of the United States, by bringing into the United States, without presentation, the following illegal aliens:

Moises Ramirez-Valdez;

Pedro Cain Nieto-Rojas

Epifanio Barajas-Rodriguez;

Jose Bineros Hernandez-Rivas.

On July 23, 2008, the Grand Jury returned an eight(8)-count

Indictment in the above-titled matter, charging defendant Salto-Rocha in seven counts, and Jose Hernandez-Rivas, his new co-defendant, in Count 8.

Mr. Salto-Rocha is charged with: Bringing in Illegal Aliens Resulting in Death (Count 1); Bringing in Illegal Aliens (Counts 2, 4, & 6); Bringing in Illegal Aliens for Financial Gain (Counts 3,5,& 7); and Aiding and Abetting (Counts 3, 5, & 7).

Co-defendant Hernandez-Rivas is charged only in Count 8, with Deported Alien Found in the United States.

Mr. Salto-Rocha's former co-defendant, Odilon Cira-Ramirez, was indicted separately in Case No.08cr2429-WQH. In that case, Mr. Cira-Ramirez is also charged with Bringing in Illegal Aliens Resulting in Death, and other smuggling offenses. [counsel believes the government has filed a Notice of Related Cases].

On August 1, 2008, counsel for defendant Salto-Rocha received approximately 253 pages of discovery. That discovery includes reference to approximately seven (7) post-arrest, videotaped interviews, conducted by Border Patrol agents between July 7-9, 2008.

AUSA Peter Mazza provided counsel with a DVD this afternoon, which should include some of these post-arrest, videotaped interviews. Counsel's interpreter will review and prepare summary translations of the interviews contained thereon over the week-end.

Counsel has also contacted the attorneys representing the material witnesses whose depositions are at issue for the purpose of this hearing, and is attempting to co-ordinate interviews with those witnesses, once she has received her interpreter's translated "summaries" of those video-taped interviews.

Counsel for these material witnesses has filed motions for

depositions, so that they could be released and returned to their country of origin.

II.

**ARGUMENT**

**THE MOTIONS FOR MATERIAL WITNESS DEPOSITIONS SHOULD BE DENIED BECAUSE THESE DEPOSITIONS WOULD VIOLATE MR. SALTO-ROCHA'S SIXTH AMENDMENT RIGHT TO CONFRONTATION; THE MOTIONS ARE INAPPROPRIATELY PREMATURE, AND THERE HAS BEEN NO SHOWING OF WITNESS UNAVAILABILITY**

Title 18, United States Code § 3144 governs the detention of individuals who may give testimony material to a criminal proceeding. This section provides that where the witness is not able to meet the conditions of the bond set by the court and is detained, the court may order the deposition of the witness where (1) deposition may secure the testimony of the witness and (2) further detention is not necessary to prevent a failure of justice. See 18 U.S.C. § 3144. In this case, the material witnesses have moved for videotape depositions pursuant to 18 U.S.C. § 3144. Although a deposition might indeed secure their testimony, this Court should order their continued detention in order to protect the rights of Mr. Salto-Rocha or in the alternative, modify the conditions of release so that the material witnesses can remain in the United States until this case is resolved. The failure of this Court to so order would result in a failure of justice on several counts.

**A. This is a Potential Capital Case.**

Mr. Salto-Rocha's interest in keeping the available witnesses is particularly crucial, since, as of today's date, the government has yet to determine whether this will be charged as a capital case. "Death is different" is an ingrained principle in our jurisprudence and it means

specifically that procedural rules are administered differently in capital cases. See e.g. Wiggins v. Smith, 539 U.S. 510 (2003); Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) (finding equitable tolling to apply in a capital habeas case which would likely not apply in a non-capital case). This principle specifically means that this Court ought not rely upon the non-capital cases dealing with material witness depositions. The import of the "death is different" jurisprudence means specifically that procedural processes which might be adequate in a non-capital case are not adequate in a capital case. For instance, a defendant in a capital case is entitled to a lesser offense jury instruction, Beck v. Alabama 447 U.S. 625 (1980), but that is not necessarily true in a non-capital case. Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) (No clearly established Supreme Court law entitled a defendant in a non-capital case to a lesser included offense instruction.) Indeed, this is why Mr. Salto-Rocha has two defense attorneys appointed in this matter.

Whatever force the cases cited by the material witnesses have in a non-capital case, those cases do not apply to this case.

**B. The deposition of material witnesses would violate the Confrontation Clause of the Sixth Amendment.**

Depositions in criminal cases are generally disfavored for several reasons, including the threat they pose to the defendant's Sixth Amendment confrontation rights. United States v. Drougal, 1 F.3d 1546, 1551-52 (11th Cir. 1993). Criminal depositions are authorized only when doing so is "necessary to achieve justice and may be done consistent with the defendant's constitutional rights." Id. at 1551. See Fed. R. Crim. P. 15(a).

The Supreme Court's decision in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004) reaffirmed the common law principle that testimonial statements may not be admitted against a defendant where the defendant has not had the opportunity to cross-examine the declarant. This is true even where the statements fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness." Id. at 1354 . In Crawford, the Court noted that the Sixth Amendment was drafted in order to protect against the "civil-law mode of criminal procedure" and "its use of *ex parte* examinations as evidence against the accused. Id. at 1363. Such *ex parte* examinations implicate Sixth Amendment concerns because they are "testimonial" in nature. The "text of the Confrontation Clause reflects this focus" and applies to "witnesses against the accused - in other words, those who bear testimony." Id. at 1363 (internal quotations omitted). Although the Court declined to define "testimonial" evidence, they noted that an "accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Id. at 1364. The Confrontation Clause does not permit such testimonial statements to be admitted at trial against an accused without the "constitutionally prescribed method of determining reliability," *i.e.*, confrontation. Id. at 1365. In other words, "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands . . . unavailability [of the declarant] and a prior opportunity for cross-examination." Id. at 1366.

Despite Crawford's broad prohibition of testimonial statements at trial where the defendant has no opportunity to confront the witness, there remain some situations in which depositions may be taken. In these situations, the burden is on the moving party to establish exceptional

circumstances justifying the taking of depositions. Drougal, 1 F.3d 1546 at 1552 (citing United States v. Fuentes-Galindo, 929 F.2d 1507, 1510 (10th Cir. 1991)). The trial court's discretion is generally guided by consideration of certain "critical factors," such as whether: (1) the witness is unavailable to testify at trial; (2) injustice will result because testimony material to the movant's case will be absent; and (3) countervailing factors render taking the deposition unjust to the nonmoving party. Id. at 1552. Here, because the material witness has not shown that any exceptional circumstances exist, the motion for videotape depositions should be denied.

When considering the issue, this Court must balance the interests of the Government and the accused, as well as the interests of the material witness. Although the material witnesses may have a liberty interest at stake, that interest is outweighed by Mr. Salto-Rocha's constitutional rights of confrontation and to due process of law in this, potentially, capital case.

The Confrontation Clause serves several purposes: "(1) ensuring that witnesses will testify under oath; (2) forcing witnesses to undergo cross-examination; and (3) permitting the jury to observe the demeanor of witnesses." United States v. Sines, 761 F.2d 1434, 1441 (9th Cir. 1985). It allows the accused to test the recollection and the conscience of a witness through cross-examination and allows the jury to observe the process of cross-examination and make an assessment of the witness' credibility. Maryland v. Craig , 497 U.S. 836, 851 (1989); Ohio v. Roberts, 448 U.S. 56, 63-64 (1979), overruled on other grounds . In addition, if any of the material witnesses has received the benefit of the Government refraining from pressing criminal charges in return for his

testimony against the accused, it is important that the jury see the reaction and demeanor of the material witness when confronted with questions that will bring out such facts, in order for the jury to decide whether to believe his statements and/or how much credit to give to his testimony.

The Ninth Circuit recently explained and embraced the importance of live testimony in United States v. Yida, 498 F.3d 945 (9th Cir. 2007). Yida focused on whether the government had used 'reasonable means' to secure the presence of a witness which the government had allowed to be deported of after the first trial of Mr. Yida. Though Yida is about what constitutes reasonable efforts by the Government, the Ninth Circuit framed the discussion with an exposition on the importance of live testimony:

> Underlying both the constitutional principles and the rules of evidence is a preference for live testimony. Live testimony gives the jury (or other trier of fact) the opportunity to observe the demeanor of the witness while testifying. William Blackstone long ago recognized this virtue of the right to confrontation, stressing that through live testimony, "and this [procedure] only, the persons who are to decide upon the evidence have an opportunity of observing the quality, age, education, understanding, behavior, and inclinations of the witness." 3 William Blackstone, Commentaries on the Laws of England 373-74 (1768). Transcripts of a witness's prior testimony, even when subject to prior cross-examination, do not offer any such advantage, because "all persons must appear alike, when their [testimony] is reduced to writing." Id. at 374. As the National Association of Criminal Defense Lawyers ("NACDL") amicus brief highlights, the superiority of live testimony as contrasted with a transcript of prior testimony has been equally praised in our own judicial system since its inception. See, e.g., Mattox v. United States, 156 U.S. 237, 242-43, 15 S. Ct. 337, 39 L. Ed. 409 (1895) ("The primary object of the constitutional provision in question was to prevent depositions . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."); see also NLRB v.

> Universal Camera Corp., 190 F.2d 429, 430 (2d Cir. 1951) ("[T]hat part of the evidence which the printed words do not preserve . . . . is the most telling part, for on the issue of veracity the bearing and delivery of a witness will usually be the dominating factors. . . ."); Broad. Music, Inc. v. Havana Madrid Rest. Corp., 175 F.2d 77, 80 (2d Cir. 1949) ("The liar's story may seem uncontradicted to one who merely reads it, yet it may be contradicted . . . by his manner . . . which cold print does not preserve.") (internal quotations omitted).

Id. at 950-51.

This is but one passage and there are many others which explain why live testimony is necessary and constitutionally compelled. The constitution only admits prior testimony when absolutely necessary, not just when it is more convenient for the government (or the witness for that matter.)

Moreover, the decision to grant video depositions is governed by Federal Rule of Criminal Procedure 15(a) which states that a material witness's deposition may be taken only upon a showing of "exceptional circumstances." United States v. Omene, 143 F.3d 1167, 1170 (9th Cir. 1998). While the material witnesses have argued generally that their continued incarceration would constitute a "hardship" for them, this fact is insufficient to satisfy his burden of proof under Rule 15(a). See Torres-Ruiz v. United States District Court, 120 F.3d 933, 935 (9th Cir. 1997).

First, almost any period of incarceration, by definition, will result in some sort of hardship to that individual. This level of hardship alone cannot constitute extraordinary circumstances. Rather, the Court in Torres-Ruiz made clear that extraordinary circumstances require something more: "tremendous hardship." 120 F.3d at 936. While the material witnesses in this case obviously would prefer to free of custody, absent more specifically compelling demonstrations of severe hardship, there is no extraordinary circumstances warranting deposition testimony.

Furthermore, this Court should consider the unique circumstances distinguishing the Ninth Circuit's decision in Torres-Ruiz. Unlike this case, the material witnesses' motion for videotape deposition in Torres-Ruiz was unopposed by the defendant. Id. at 934-35. Perhaps more importantly, in Torres-Ruiz the defendant entered a guilty plea less than two weeks after the motion for deposition was made, indicating that the case was already near disposition when the motion was made. Id. at 936-37. The instant case, however, stands in a much different procedural posture.

**C. The motion to depose material witnesses is premature because Mr. Salto-Rocha has not been granted sufficient time to formulate a theory of the case; the government has not even determined whether to charge the case as a capital case; counsel hasn't even received all of the discovery, and only received some of the video-taped post-arrest statements today.**

Mr. Salto-Rocha has pled not guilty to all counts of the indictment. Substantive motions of any sort have yet to be filed in this case – in fact, this motion is to be heard two weeks before the initial discovery motions are heard. The investigation in this case has just begun. In short, it is very early in the case, and to require Mr. Salto-Rocha to cross-examine the material witness at the current juncture of the proceedings and prior to the formulation of his precise theory of the case would severely prejudice his future trial rights.

The motion's prematurity is also evident because the material witnesses may be necessary for any pretrial evidentiary hearings.

Because the material witnesses are percipient witnesses -- and more importantly, non-governmental witnesses -- to the alleged smuggling endeavor, their testimony may prove to be integral to the fair adjudication of this case. Also, there may be points upon which one

material witness's testimony will contradict (or reinforce) a point from another witness's testimony and there is no way for Mr. Salto-Rocha to foresee what that point of evidence or argument will be prior to trial.

**D. <u>The motion for deposition should be dismissed because there has been no showing of the unavailability of the witness</u>.**

If the Court determines that the detention of the material witnesses must be reviewed at this point in time, the Court can easily resolve the issue by modifying the conditions of release for the material witness so that his continued detention would be unnecessary. Conditions of release for material witnesses are governed by 18 U.S.C. § 3142. Under this section, "[t]he judicial officer <u>shall</u> order the pretrial release of the person on personal recognizance, or upon execution of an unsecured personal appearance bond . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required . . . ." 18 U.S.C. § 3142(b)(emphasis added). Clearly, § 3142(b) suggests that this Court can order that the material witness be released on his own recognizance. The material witnesses have no incentive <u>not</u> to come back to court to testify; they are not being charged with any crimes, and therefore, have no incentive to flee the country.

Moreover, the Bail Reform Act states that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person." 18 U.S.C. § 3142(c)(2). This mandate, combined with the preference for release upon one's own recognizance, strongly suggests that the proper remedy for the material witnesses in this case is a motion to modify the terms of their release, not for the draconian remedy of immediately ordering videotape depositions and deporting them to the Republic of Mexico, especially not at this very early stage of the

proceedings.

## III.

## CONCLUSION

Because the deposition of this material witness would violate Mr. Salto-Rocha’s Sixth Amendment right to confrontation, would be inappropriately premature and would fail to meet underlying procedural requirements--including the unavailability of witnesses--the material witnesses motions should be denied.

Respectfully submitted,

/s/ Karen M. Stevens
KAREN M. STEVENS
Attorney for Mr. Salto-Rocha

Dated: August 8, 2008